**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| EDGAR MHOON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 3:16-cv-01751 |
| | ) | JUDGE CAMPBELL |
| METROPOLITAN GOVERNMENT OF | ) | |
| NASHVILLE & DAVIDSON COUNTY, | ) | |
| TENNESSEE, *et al.,* | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Before the Court are five motions to dismiss (Doc. Nos. 25, 28, 30, 33, 35) filed by

defendants the Metropolitan Government of Nashville & Davidson County, Tennessee

("Metro"), Daron Hall, Tony M. Wilkes, Richard Middleton, Casey Fiddler, David Jones, Kyle

Kort, Gregory Williamson, and Antoine Smith.

I.      **Factual and Procedural Background**

Plaintiff Edgar Mhoon instituted this action on July 8, 2016 against the above-referenced

defendants as well as Patrick Vongsamphanh, Caylan Hawkins, and eight "John Doe"

defendants.[1] He filed his Amended Complaint (Doc. No. 16) on August 8, 2016. In the Amended

Complaint, Plaintiff asserts that, on August 8, 2015, while he was a pretrial detainee in the

custody of the Davidson County Sheriff's Office ("DCSO"), a division of Metro, he was brutally

assaulted by Vongsamphanh "and/or other Defendants" who also thereafter demonstrated

deliberate indifference to serious medical injuries resulting from the assault by forcibly changing

his clothes and then transporting him to the hospital in a police car instead of an ambulance.

---

[1] The John Doe defendants have not yet been identified or served.

Plaintiff asserts that, as a result of this incident, he suffered severe trauma, including serious spinal injuries that left him paralyzed. Plaintiff was initially transported to Nashville General Hospital and then transferred to Vanderbilt University Medical Center. After having undergone numerous medical procedures, he currently resides at a private rehabilitation facility in Memphis, Tennessee.

Based on the assault and its aftermath, Plaintiff asserts eight counts in the Amended Complaint, as follows:

- Claims under 42 U.S.C. §§ 1983, 1985, and 1986 for excessive force and cruel and unusual punishment, in violation of his rights under the Fourth, Eighth, and Fourteenth Amendments, against all Defendants (Counts One through Three);

- State-law claims of assault and battery against the individual Defendants (Count Four);

- Claim against Metro under Tenn. Code Ann. § 8-8-302 arising out of the individual Defendants' intentional acts (Count Five);

- Claims of deliberate indifference to serious medical needs against Metro and the individual Defendants insofar as their actions "were not customary or in compliance with DCSO practice and policy" (Am. Compl. at 19), in violation of Fourteenth Amendment of the United States Constitution and Article 1, Section 8 of the Tennessee Constitution (Count Six);

- Claims of intentional infliction of emotional distress/outrageous conduct against all Defendants (Count Seven); and

- Negligence claims under the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-101, *et seq.*, against all Defendants (Count Eight).

He seeks compensatory and punitive damages, as well as attorney fees under 42 U.S.C. § 1988.

Defendants seek dismissal of all claims against them. Plaintiff does not oppose the motion filed by Antoine Smith. (*See* Doc. No. 40.) That motion (Doc. No. 35) will therefore be granted without discussion and the claims against Smith dismissed with prejudice.

Regarding the remaining motions, Plaintiff does not contest the dismissal of his claims

under 42 U.S.C. §§ 1985 and 1986, and he concedes that, because he was a pretrial detainee rather than an arrestee or convicted prisoner at the time the events alleged in this action occurred, his rights were protected by the Fourteenth Amendment rather than the Eighth or Fourth. Accordingly, the claims asserted against all Defendants under §§ 1985 and 1986, and those § 1983 claims premised on alleged violations of Plaintiff's rights under the Fourth and Eighth Amendments, will be dismissed without discussion.

Plaintiff also does not oppose Defendants' contention that, to the extent that Plaintiff invokes the Tennessee Constitution as the basis for any of his civil rights claims, such claims should be dismissed because Tennessee law does not recognize a private right of action for damages based on violations of the Tennessee Constitution. *See Bowden Bldg. Corp. v. Tenn. Real Estate Comm'n*, 15 S.W.3d 434, 446 (Tenn. Ct. App. 1999) (no "implied cause of action for damages" for violations of the Tennessee Constitution); *Cline v. Rogers*, 87 F.3d 176, 179–80 (6th Cir. 1996). Any claim for violation of the Tennessee Constitution will also be dismissed.

Otherwise, Plaintiff opposes the motions to dismiss and, in the alternative, requests in response to some of the motions that he be permitted the opportunity to amend his complaint prior to dismissal if the Court is inclined to grant Defendants' motions.

## II. Standard of Review

All the motions to dismiss are filed under Rule 12(b)(6). In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To establish the "facial plausibility"

required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679; *Twombly*, 550 U.S. at 556.

**III.   Casey Fiddler, David Jones, Kyle Kort, and Gregory Williamson's Motion to Dismiss (Doc. No. 33); Richard Middleton's Motion to Dismiss (Doc. No. 25)**

Plaintiff asserts federal claims against Defendants Fiddler, Jones, Kort, Williamson, and Middleton (the "Fiddler Defendants"),[2] under 42 U.S.C. § 1983 for the use of excessive force and deliberate indifference to his serious medical needs; and state law claims of assault and battery, intentional infliction of emotional distress/outrageous conduct, and negligence. In their motions to dismiss, the Fiddler Defendants argue that (1) the individual capacity claims § 1983 claims must be dismissed because the complaint does not adequately allege each Defendant's personal involvement in the events giving rise to Plaintiff's injuries, and the Defendants are entitled to qualified immunity; (2) the Court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims if the federal claims are dismissed; and (3) alternatively, Plaintiff's outrageous conduct claim should be dismissed for failure to allege sufficient facts to support the claim. Middleton also specifically requests that Plaintiff be required to file a more definite statement pursuant to Federal Rule of Civil Procedure 12(e) if his complaint is not dismissed.

---

[2] Defendant Middleton is represented by different counsel from the other Fiddler Defendants and has filed his own separate motion to dismiss. Because the allegations against Fiddler, Jones, Kort, Williamson, and Middleton are essentially identical, and because the arguments raised in their motions to dismiss substantially overlap, the Court addresses these two motions together.

## A. Individual Capacity Claims Under § 1983

In order to hold a defendant liable in his individual capacity under § 1983, a plaintiff must show that that particular defendant was personally involved in the alleged constitutional deprivations. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."). Virtually all of the excessive force allegations in the Amended Complaint are couched in the disjunctive "and/or." (*See, e.g.*, Am. Compl. ¶ 13 ("On or about August 8, 2015, Plaintiff was beaten by Defendants Vongsamphanh, Fiddler, Smith, Kort, Williamson, Jones, Middleton, Hawkins, *and/or* John Does 1–8 . . . ." (emphasis added)).) Because the "and/or" indicates that each individual defendant might or *might not* have been involved in the use of excessive force, the allegations are insufficiently specific to state a claim under § 1983. *Accord Patterson v. Novartis Pharm. Corp.*, 451 F. App'x 495, 497 (6th Cir. 2011) (dismissing claims against the defendant pharmaceutical company where the plaintiff alleged that she received infusions of the drug manufactured by the defendant "and/or" the identical generic drug, not manufactured by the defendant, which the Sixth Circuit construed to mean that she "could have received only" the name-brand drug, or both the name-brand and the generic, or only the generic, and therefore failed to satisfy the pleading standards set forth in *Twombly* and *Iqbal*).

Similarly, in framing the factual allegations supporting the deliberate indifference claims, Plaintiff typically uses a generic reference to "Defendants," without specifying which Defendants were involved, even where it is clear that not all of them could have been involved. (*See, e.g.*, Am. Comp. ¶¶ 37–38 ("[T]he Defendants restrained the Plaintiff and forcibly changed Plaintiff's clothing . . . . Plaintiff arrived at Nashville General Hospital . . . via a police car . . .

and was forcibly drug [sic] from the car into the facility by the Defendants.").) Plaintiff does not specifically allege that any individual was responsible for the decision to transport him to the hospital in a police car, and he does not identify which Defendants accompanied him to the hospital and physically moved him from the car into the hospital. This form of group pleading is insufficient to establish that any one of Fiddler Defendants was deliberately indifferent to Plaintiff's serious medical needs. *Accord Rodriguez v. Providence Cmty. Corrs., Inc.*, 3:15-CV-01048, 2016 WL 3351944, at *11 (M.D. Tenn. June 9, 2016) (Sharp, C.J.) ("A complaint that fails to impute concrete acts to specific litigants, fails to state a plausible claim." (internal quotation marks and citations omitted)); *DeSoto v. Metro. Gov't of Nashville & Davidson County*, 64 F. Supp. 3d 1070, 1087 (M.D. Tenn. 2014) (Trauger, J.) ("Here, [the] Amended Complaint in general alleges claims against 'the defendants,' without specifying which defendants are the actual target of certain claims, what actions those defendants allegedly took related to that particular claim, and why those actions could support a given claim.").

### B.     Official Capacity Claims Under § 1983

To the extent the Fiddler Defendants are sued in their official capacity, such claims "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). Consequently, any official-capacity claims against the Fiddler Defendants are redundant of the official capacity claims against the supervisory defendants, Hall and Wilkes, and redundant of the claims against Metro itself. As discussed in the context of the Court's discussion of the claims against Metro, below, the Court finds that the Amended Complaint does not contain sufficient facts to state colorable official-capacity claims against the Fiddler Defendants under § 1983.

## C. State Law Claims

Plaintiff's assault and battery claims are supported by the same facts as the excessive force claims and are therefore subject to the same deficiency that plagues the § 1983 claims.

To establish a claim under Tennessee law for outrageous conduct, also called intentional infliction of emotional distress, a plaintiff must show that the conduct he complains about was (1) intentional or reckless; (2) so outrageous that it is not tolerated by civilized society; and (3) resulted in serious mental injury. *Doe 1 ex rel. Doe 1 v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 31, 41 (Tenn. 2005). Under *Twombly*, again, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Moreover, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In this case, Plaintiff alleges that, as a result of Defendants' conduct, he suffered "severe and permanent . . . mental injuries" (Am. Compl. ¶ 12), serious psychological injury (Am. Compl. ¶¶ 62, 68, 74, 80, 86), "psychological trauma" (Am. Comp. ¶ 84), "psychological, and emotional injury" (Am. Compl. ¶¶ 96, 98). By stating simply that he suffered serious mental, psychological, and emotional injury, Plaintiff does no more than provide a recitation of an element of the cause of action of outrageous conduct without actually *showing* how he suffered serious mental injury. The pleading of outrageous conduct fails to meet the standard established by *Twombly* and *Iqbal*.

## D. Conclusion

Because the allegations in the Amended Complaint are insufficient to support any of Plaintiff's legal claims against the Fiddler Defendants under § 1983 or state law, but there is a

possibility that Plaintiff can restate his allegations to state viable claims, the Court will grant

Plaintiff's request to file a second amended complaint reframing his claims under § 1983 and

state law in accordance with this opinion. The Court will also grant defendant Middleton's

motion for more definite statement.

As indicated above, the Court will grant in part the Fiddler Defendants' motions insofar

as they seek dismissal of the § 1985 and § 1986 claims, the § 1983 claims based on the violation

of the Fourth and Eighth Amendments, and any claim based on violation of the Tennessee

Constitution. Otherwise, the Court will deny the motions (Doc. Nos. 25, 33) as moot in light of

the anticipated amendment, but without prejudice to the Fiddler Defendants' ability to bring

motions to dismiss the anticipated Second Amended Complaint if it fails to cure the deficiencies

identified in this opinion.

## IV.    Daron Hall and Tony Wilke's Motion to Dismiss (Doc. No. 30)

### A.    Individual Capacity Claims Under § 1983

As set forth above, to hold individuals liable in their individual capacities under § 1983, a

plaintiff must show that each defendant was personally involved in the alleged constitutional

deprivations. *Heyerman* 680 F.3d at 647. The Amended Complaint contains no allegations

suggesting that Hall or Wilkes was personally involved in or aware of the events giving rise to

Plaintiff's injuries at the time they occurred. Instead, Plaintiff alleges that Hall, as Davidson

County Sheriff, was responsible for the lawful operation of the jail where Plaintiff was

incarcerated, was "the chief law enforcement officer and final policymaker for Davidson County

who is responsible for the establishment and enforcement of the policies, practices, and customs"

of the DCSO and "responsible for the training, supervision, and discipline of correction officers,

employees and/or agents under his command." (Am. Compl. ¶ 20.) Similarly, he alleges that

Wilkes, as Chief of Corrections for the DCSO, was "responsible for the lawful administration and operation of the county jail within which Plaintiff was incarcerated." (Am. Compl. ¶ 21.)

In his response to the supervisory defendants' Motion to Dismiss, Plaintiff argues only that the claims should not be dismissed "because Hall and Wilkes developed, implemented, authorized and encouraged the policies and practices that directly contributed to the unconstitutional conduct which caused Plaintiff's injuries." (Doc. No. 42, at 5.) Plaintiff, in other words, "attempts to conflate a § 1983 claim of individual supervisory responsibility with a claim of municipal liability." *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). The law is clear that "'[s]upervisory liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act.' Rather, the supervisors must have actively engaged in unconstitutional behavior." *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006) (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Moreover, "[section] 1983 liability must be based on more than *respondeat superior*, or the right to control employees. Thus, a supervisory official's failure to supervise, control or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee v. Luttrell*, 99 F.3d 293, 300 (6th Cir. 1999) (internal quotation marks and citation omitted). Plaintiff's allegations do not support the claims against Hall and Wilkes in their individual capacity.

## B.    Official Capacity § 1983 Claims

Suing a government employee in his official capacity "'generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978)). As discussed below in the context of the Court's discussion of the claims against

Metro, the governmental entity of which Hall and Wilkes are agents, the Court finds that the Amended Complaint does not contain sufficient facts to state official-capacity claims under § 1983 either.

### C. State Law Claims

Plaintiff agrees that he did not intend to state assault and battery claims against Hall and Wilkes and does not oppose the dismissal of those claims. (Doc. No. 42, at 4.)

Plaintiff opposes the dismissal of his outrageous conduct claim against Hall and Wilkes. Aside from the problem, discussed above, that Plaintiff did not adequately plead serious mental injury, he also has not alleged facts showing that Hall or Wilkes personally engaged in any action that could be deemed outrageous or that caused injury to Plaintiff.

Plaintiff also brings a negligence claim against Hall and Wilkes under the Tennessee Governmental Tort Liability Act ("TGTLA"), Tenn. Code Ann. §§ 29-20-101 through 29-20-408. These Defendants assert that the Amended Complaint fails to state a negligence claim against them. In response, "Plaintiff concedes that if [Metro] is not immune from suit under the GTLA, then the individual claims against Wilkes and Hall will be foreclosed. However, if [Metro] is found to be immune from suit, then Wilkes and Hall are not protected from suit under the GTLA." (Doc. No. 42, at 13 (citing *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 947 (M.D. Tenn. 2012)).) He argues that he has "pled sufficient allegations that the negligent action and/or inaction outlined above to pursue a general negligence claim against Hall and Wilkes in the event that they are not covered by immunity under the GTLA." (*Id.* at 15.)

Hall and Wilkes, in their individual capacity, do not enjoy appear to enjoy immunity under the TGTLA. However, the Amended Complaint fails to identify what policy Hall or Wilkes negligently implemented, or what aspects of the training, supervision, and discipline

were insufficient, nor does it include any factual allegations about how such alleged failures led to Plaintiff's injuries. The essential elements of a negligence claim under state law are: "(1) a duty of care owed by defendant to plaintiff; (2) conduct below the applicable standard of care that amounts to a breach of that duty; (3) an injury or loss; (4) cause in fact; and (5) proximate, or legal, cause." *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *see also Naifeh v. Valley Forge Life Ins. Co.*, 204 S.W.3d 758, 771 (Tenn. 2006). Absent any specific allegations about a duty of care and breach of that duty that was the proximate cause of Plaintiff's injuries, the Amended Complaint fails to state a negligence claim against Hall and Wilkes. *Accord Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 755 (6th Cir. 2014) (upholding district court's dismissal of claims when plaintiff failed to allege any specific negligent behavior).

Finally, neither Hall nor Wilkes can be vicarious liable for the negligence of the Sheriff's deputies whose acts allegedly caused Plaintiff's injuries. Plaintiff states no basis for holding Wilkes vicariously liable and Hall, as Sheriff, is immune from liability "for any wrongs, injuries, losses, damages or expenses incurred as a result of any act or failure to act on the part of any deputy appointed by the sheriff, whether the deputy is acting by virtue of office, under color of office or otherwise." Tenn. Code Ann. § 8-8-301.

### D.    Conclusion

The Court will grant Hall and Wilkes' motion to dismiss in part. Specifically, because Plaintiff does not contend that he has additional facts to add in support of the supervisory Defendants' individual liability under § 1983, the Court will grant Hall and Wilkes' motion to dismiss the individual capacity claims against them with prejudice. The assault and battery and outrageous conduct claims against Hall and Wilkes will likewise be dismissed with prejudice. In addition, as indicated above, the § 1985 and § 1986 claims, the § 1983 claims based on the

violation of the Fourth and Eighth Amendments, and any claim based on violation of the Tennessee Constitution will be dismissed with prejudice.

However, the Court will grant Plaintiff's request to amend his complaint to restate claims against Hall and Wilkes under § 1983 in their official capacity and to restate negligence claims. Hall and Wilkes' motion to dismiss those claims will be denied as moot, but without prejudice to their ability to renew their motion if the anticipated Second Amended Complaint fails to cure the deficiencies identified herein.

## V.      Metro's Motion to Dismiss (Doc. No. 28)

In Counts Two, Three, and Six of the Amended Complaint, Plaintiff brings § 1983 claims against Metro. In Counts Four, Five, Seven, and Eight, Plaintiff asserts that, pursuant to the doctrine of r*espondeat superior*, Tenn. Code Ann. § 8-8-302, and the TGTLA, Tenn. Code Ann. § 29-20-205 Metro is liable to Plaintiff for the individual Defendants' commission of assault and battery, outrageous conduct/intentional infliction of emotional distress, and negligent breach of the duty of care conduct. Metro seeks dismissal of all claims asserted against it. Plaintiff opposes dismissal and, in the alternative, requests permission to amend his complaint to correct any deficiencies.

### A.      Section 1983 Claims

Under *Monell*, a municipal entity like Metro "may only be sued under § 1983 for unconstitutional or illegal municipal policies, and not for unconstitutional conduct of [its] employees." *Ctr. for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 819 (6th Cir. 2007) (quoting *Monell*, 436 U.S. at 691). The adoption or deliberate non-adoption of a "policy or custom" that violates a plaintiff's constitutional rights is the sole manner in which a municipality can be held liable under § 1983. *Schroder v. City of Fort Thomas*, 412 F.3d 724, 727 (6th Cir.

2005). To plead a claim for municipal liability under § 1983, a plaintiff must plausibly allege that his constitutional rights were violated and that a policy or custom of the municipality was the "moving force" behind the deprivation of the plaintiff's rights. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010) (citing *Monell*, 436 U.S. at 694 (internal citation omitted). A municipality cannot be held liable under § 1983 on a *respondeat superior* basis. *Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005)432–33 (citing *Monell*, 436 U.S. at 694).

To hold Metro liable for its officers' alleged use of excessive force under a "custom" theory, Plaintiff must show that Metro has (1) an unwritten custom (2) of remaining deliberately indifferent (3) to a clear and persistent pattern of the illegal use of force or the deliberate indifference to serious medical needs (4) that it knew or should have known about. *Id.* at 433; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 816 (6th Cir. 2005) (concluding that, absent evidence of a "history of similar incidents" or notice, or evidence that the governmental entity's "failure to take ameliorative action was deliberate," plaintiff's claim of municipal liability under § 1983 fails). One way of establishing a custom or policy claim is to plead facts showing that a municipality knew that its training was lacking but failed to take action. *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008); *see also Harris*, 489 U.S. at 388 (the inadequacy of police training may serve as a basis for § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact").

The allegations in the Amended Complaint concerning Metro's (or the DCSO's) customs and policies are all extremely general and conclusory in nature. (*See, e.g.*, Am. Compl. ¶ 69 ("DCSO failed to train its staff to properly handle inmates properly . . . . DCSO adopted a policy and/or custom and/or condoned and/or ratified a policy of punishing inmates such as Plaintiff for their negative or undesirable behavior, through the use of force . . . .").) Plaintiff does not

identify or describe any of Metro's actual policies, nor does he identify any other instances in which DCSO officers were accused of using excessive force to subdue pretrial detainees. As Metro argues: "The entire basis for Plaintiff's Section 1983 municipal liability claims is that these particular [officers] did not properly handle their encounter with Plaintiff. He then extrapolates this one instance into a general hypothesis that the Metropolitan Government therefore must have a custom, policy, or practice of allowing officers to use excessive force against inmates." (Doc. No. 29, at 9.)[3] Plaintiff attempts to avoid this conclusion by arguing that his assertion that the failure to develop appropriate policies "demonstrates a widespread practice or custom" (Am. Compl. ¶ 79) is sufficient to meet the pleading standard.

It is not. For purposes of Plaintiff's "custom" claim, the vague reference to "widespread practice or custom" does not suggest that Metro has an unwritten custom of remaining deliberately indifferent to a "clear and persistent pattern" of illegal uses of force. *See Thomas*, 398 F.3d at 429 (identifying elements of municipal liability claim under a custom theory). Asserting that a practice is "widespread" is not the same as *showing* that it is widespread. *Cf. Birgs v. City of Memphis*, 686 F. Supp. 2d 776, 780 (W.D. Tenn. 2010) ("The easiest way for an individual to meet her burden is to point to past incidents . . . that authorities ignored.").[4]

And the statements regarding the DCSO's purported policies, while couched as a factual allegations, include no well pleaded facts to support the legal conclusion that Metro had actually

---

[3]     Metro also points out that, as a governmental entity, it is subject to the Public Records Act, Tenn. Code Ann. § 10-7-101 *et seq.*, which would have permitted Plaintiff access to any written policies, training materials, and records involving prior uses of force.

[4]     Contrary to Plaintiff's suggestion, construing the pleading standard to require him to allege more specific facts showing a widespread custom or practice would not require him to "show his work . . . and list all research and factors that support his identification of the appropriate policies, practices and cases that perpetrated a pattern" or to "list every specific instance" of prior issues to support his claim. (Doc. No. 41, at 9.) But pleading *some* of these facts, or at least some basis for concluding that Metro was on notice of a problem, is required. *Accord Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 931 (M.D. Tenn. 2012).

adopted any such policies. *Cf. Hutchison v. Metro. Gov't of Nashville and Davidson Cnty.*, 685

F. Supp. 2d 747, 751 (M.D. Tenn. 2010) (dismissing plaintiff's claim that Metro had a custom,

policy, or practice of stopping vehicles and illegally ordering disabled passengers to exit based

on the absence of supporting factual assertions). As the Sixth Circuit has observed in similar

circumstances:

> The danger in [Plaintiff's] argument is that [he is] attempting to infer a municipal-wide policy based solely on one instance of potential misconduct. This argument, taken to its logical end, would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard. This path to municipal liability has been forbidden by the Supreme Court.

*Thomas*, 398 F.3d at 432–33 (citing *Monell*, 436 U.S. at 694).

The Sixth Circuit has recently reiterated, in the context of a § 1983 case, that the pleading

standard is "relatively strict." *Gavitt v. Born*, Nos. 15-2136/2434, 2016 WL 4547258, at \*17 (6th

Cir. Sept. 1, 2016). Under this standard, the plaintiff's "obligation to provide the 'grounds' for

the claimed entitlement to relief 'requires more than labels and conclusions, and a formulaic

recitation of the elements of a cause of action will not do.'" *Id.* at \*10 (quoting *Twombly*, 550

U.S. at 555). Plaintiff's conclusory assertions simply do not meet the *Twombly* standard.

### B. State Law Claims

Because the Court will grant Plaintiff leave to amend his complaint, Metro's motion to

dismiss the state law claims will be rendered moot.

### C. Summary

Metro's motion to dismiss (Doc. No. 28) will be granted in part insofar as Metro seeks

dismissal of the § 1985 and § 1986 claims, the § 1983 claims based on the violation of the Fourth

and Eighth Amendments, and any claim based on violation of the Tennessee Constitution. The

motion will be denied as moot, without prejudice, insofar as it pertains to the remaining claims,

and Plaintiff will be granted leave to amend his complaint to restate his municipal liability claims against Metro under § 1983 and state law.

## VI.    Conclusion

An order consistent with this Memorandum is filed herewith.


_____
TODD J. CAMPBELL
UNITED STATES DISTRICT JUDGE