UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| EDGAR MHOON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| METROPOLITAN GOVERNMENT | ) | |
| OF NASHVILLE & DAVIDSON | ) | |
| COUNTY, TENNESSEE, | ) | |
| INDIVIDUALLY AND | ) | |
| D/B/A DAVIDSON COUNTY | ) | No. 3:16-01751 |
| SHERIFF'S OFFICE, SHERIFF | ) | Judge Sharp |
| AARON HALL, Individually and in his | ) | |
| official capacity, CHIEF TONY M. | ) | |
| WILKES, Individually and in his official | ) | |
| capacity, PATRICK | ) | |
| VONGSAMPHANH, | ) | |
| CASEY FIDDLER, KYLE KORT, | ) | |
| GREGORY WILLIAMSON, DAVID | ) | |
| JONES, RICHARD MIDDLETON, | ) | |
| CAYLAN HAWKINS, MICHAEL | ) | |
| MCCOY, KEVIN COLE, | ) | |
| And JOHN DOES 1 – 8, individually | ) | |
| and in their official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court in this civil rights lawsuit are Motions to Dismiss filed by three of the individual Defendants. One, filed by Defendant Richard Middleton (Docket No. 82), seeks dismissal on the merits and will be denied. The other two, filed by Defendants Kevin Cole (Docket No. 90) and Michael McCoy (Docket No. 92), seek dismissal on statute of limitations grounds and will be granted.

### I. Background

1

In order to place the present arguments in context, only a bit of background is necessary. Drawn from the now-controlling 100-page, 730-paragraph Second Amended Complaint, the relevant factual *allegations* are as follows.

Plaintiff was arrested on April 29, 2015, and booked into the Davidson County Male Correctional Development Center ("CDC") as a pretrial detainee. On August 8, 2015, he was in the common area of the C-pod at CDC having a discussion with his bunkmate about the law.

Plaintiff asked correctional officer Patrick Vongsamphanh, a Defendant herein, to change the television channel. Apparently disagreeing with what Plaintiff was telling his cell mate, Defendant Vongsamphanh confronted Plaintiff and tried to grab him in an effort to take him to a holding cell. Plaintiff demurred, backed up, sat down in a chair, and asked to speak to the Lieutenant on duty.

Having none of it, Defendant Vongsamphanh radioed for back up (*i.e.* called a "Code Red"), yanked Plaintiff out of the chair, and twisted his arm behind his back. Defendant Vongsamphanh then attempted a double-leg takedown, picked Plaintiff up, and slammed him head first into the floor. While Plaintiff was prone, Defendant Vongsamphanh kneed him in the back and handcuffed his hands behind his back.

The head slam caused Plaintiff to temporarily lose consciousness. When he awoke, Plaintiff was groaning and said that he could not move his extremities. His breathing was labored, he was not moving, and he was lying in a pool of blood.

Several correctional officers, including Casey Fiddler, David Jones and Gregory Williamson, all Defendants herein, responded to the "Code Red." Despite seeing Plaintiff's condition and hearing his complaints, those Defendants forced Plaintiff to stand and allowed him to collapse to the

2

floor when his legs gave out. Defendants Fiddler and Jones then dragged Plaintiff into the hallway and pinned him up against the wall.

Apparently, a nurse also responded to the back-up call, as did Defendant Middleton, who rolled Plaintiff over so that the nurse could finish her examination. When the nurse ordered that Plaintiff be transported to the hospital, Defendants Williamson and Jones, under the supervision and direction of Defendant Kevin Cole, forcibly changed Plaintiff's clothing and placed him in a squad car.

Defendant Michael McCoy shackled Plaintiff's hands and feet and drove him to Nashville General Hospital. Because Plaintiff was unable to use his arms or legs, Defendant McCoy pulled him out of the car and dragged him into the hospital.

At the hospital, Plaintiff was stabilized and an ambulance was called to transport him to the Vanderbilt University Medical Center for more emergent care. Plaintiff was placed on a backboard, and a cervical collar was fitted around his neck. Ambulance attendants reported that Plaintiff did not move his arms or legs during the trip to Vanderbilt.

Once at Vanderbilt, Plaintiff was intubated, a tracheotomy tube was inserted, and he was placed on mechanical ventilation for respiratory failure. Physicians ordered a series of tests and procedures, including a CT scan of the head, cervical spine, chest, abdomen and pelvis, and X-rays of the chest and pelvis. These tests indicated neurologic deficits and a cervical spine injury.

The day after the incident, Plaintiff underwent an emergency C3-C6 laminectomy and spinal fusion at Vanderbilt. He remained on mechanical ventilation for respiratory failure.

At some point, he was transferred from Vanderbilt to the Lois M. DeBerry Special Needs Facility, a Tennessee Department of Corrections facility. On November 25, 2015 Plaintiff was

transferred to the Spinal Cord Injury Center at the Veteran's Affairs Medical Center ("VA Medical Center") in Memphis, Tennessee for more aggressive rehabilitation. After a stint in a private rehabilitation facility where Plaintiff's condition deteriorated, he was returned to the VA Medical Center and remains there today.

Plaintiff claims that as a result of the incident at the CDC he suffered paralysis, chronic neck pain, severe spasticity, insomnia, and tingling in both upper extremities. Suit was filed in this Court on July 8, 2016. The Second Amended Complaint filed some 4½ months later brings a number of federal and state claims against a dozen named Defendants and eight "John Doe" Defendants.

## II. Defendant Middleton's Motion to Dismiss (Docket No. 82)

Plaintiff sues Defendant Middleton under 42 U.S.C. § 1983 for excessive force and deliberate indifference to a serious medical need in violation of the Fourteenth Amendment to the United States Constitution. He also sues that Defendant for assault and battery and the intentional infliction of emotional distress under Tennessee law.[1]

For a number of reasons, Defendant Middleton seeks dismissal of all claims against him under Rule 12(b)(6) of the Federal Rules of Civil Procedure. First, he argues that "his actions were objectively reasonable and do not constitute excessive force as a matter of law. See Coley v. Lucas County, Ohio, 799 F.3d 530, 538 (6th Cir. 2015)." (Docket 82 at 2). Second, and citing Smith v. County of Lenawee, 505 Fed. App'x 526, 532 (6th Cir. 2012), he argues the deliberate indifference claim "should be dismissed because Plaintiff fails to allege facts that demonstrate Middleton acted with deliberate indifference where Plaintiff was under the care and supervision of the on-site nurse

---

[1] A negligence claim against this Defendant and others was dismissed via stipulation of the parties in accordance with Fed. R. Civ. P. 41(a)(1)(ii). (Docket No. 84).

at all times Middleton was present and where Middleton acted reasonably and pursuant to the nurse's instruction." (Id. at 3).[2] Third, Defendant Middleton argues that "for the same reasons Plaintiff's excessive force claim . . . must fail," so must his assault and battery claim fail because Defendant Middleton's "alleged actions in moving Plaintiff's handcuffs from the back to the front of Plaintiff at the nurse's direction were objectively reasonable and did not constitute an unpermitted touching that infringed upon Plaintiff's reasonable sense of personal dignity. Cordell v. Overton Cty., No. 2:14-00042, 2016 WL 4591614, at *8 (M.D. Tenn. Sept. 2, 2016)." (Id.). Fourth, he argues that the intentional infliction of emotional distress claim "should be dismissed because the Second Amended Complaint fails to identify or describe any conduct on the part of Middleton that was so extreme and outrageous that it is not to be tolerated by a civilized society." (Id.). Finally, Defendant Middleton argues that he is entitled to qualified immunity on all of the claims asserted.

Tellingly, Smith, Copeland, Bennett, Crawford, and Cordell cited by Defendant Middleton in his Motion were all decided in the context of a motion for summary judgment after discovery had been completed, as were the majority of the cases he relies on for substantive propositions in his accompanying Memorandum of Law. Here, of course, the Court's concern is not whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Rather, the Court's concern is whether the Second Amended Complaint states claims for relief under Rule 8(a)(2) sufficient to survive a Rule 12(b)(6) attack.

The interplay between those rules was discussed by the Supreme Court in Ashcroft v. Iqbal,

---

[2]With respect to both federal claims, Defendant Middleton also argues that Section 1983 requires personal involvement by a defendant, yet Plaintiff does not allege that he condoned or encouraged the allegedly unlawful activity by other. In support, he relies upon cases such as Crawford v. Geiger, 2006 WL 4245480, *6 (6th Cir. Aug. 11, 2016), Bennett v. Schroeder, 99 F. App'x 707, 712-13 (6th Cir. 2004) and Copeland v. Machulis, 57 F.3d 476, 481 (6th Cir. 1995).

5

556 U.S. 662, 667-78 (2009) and Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). In Ashcroft, the Court wrote:

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in Twombly , . . . the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. . . . A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." . . . Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." . . .
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'".

552 U.S. 667-78 (internal citations omitted). In short, under Iqbal and Twombly, saying too little or stating facts in a conclusory fashion is insufficient. On the other hand, a plaintiff can say too much and "'plead himself out of court by pleading facts that show that he has no legal claim.'" Epstein v. Epstein, 843 F.3d 1147, 1150 (7th Cir. 2016) (citation omitted).

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679. Drawing on those things, the Court finds that Plaintiff has "nudged [his] claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

It could very well be that Defendant Middleton rolled Plaintiff over ever-so-gently, and that he did so at the direction of medical personnel. After all, Plaintiff alleges that "Officer Middleton rolled [him] over to move his handcuffs to the front so medical could finish their examination," and,

6

similarly, that "[t]he nurse asked for the handcuffs to be moved to the front so she could evaluate the cut on [Plaintiff's] hand" and, accordingly, Defendant "Middleton rolled [Plaintiff] over and moved [his] handcuffs from the back to the front." (Docket No. 63, Second Amended Complaint ¶¶ 42, 452). Were that all, there might be something to the present Motion because (1) under either the due process clause of the Fourteenth Amendment or the cruel and unusual clause of the Eighth Amendment, "an excessive-force claimant must show something more than *de minimis* force," Leary v. Livingston Cty., 528 F.3d 438, 443 (6th Cir. 2008); (2) for there to be deliberate indifference liability an "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference," Garretson v. City of Madison Heights, 407 F.3d 789, 797 (6th Cir. 2005); (3) battery requires "unlawful and harmful (or offensive) contact by one person with the person of another," Trobaugh v. Melton, 2016 WL 3031610, at *6 (M.D. Tenn. May 27, 2016); and (4) the intentional infliction of emotional distress requires conduct "so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency," Bain v. Wells, 936 S.W.2d 618, 623 (Tenn. 1997).

But there are more allegations that both add context to Defendant Middleton's alleged actions and suggest greater participation. According to the Second Amended Complaint, Defendant went to C-pod in response to the "Code Red" and saw Plaintiff being "dragged into the hallway by Officers Fiddler and Kort with rear restraints applied." (Docket No. 63, Second Amended Complaint ¶ 450). At that time, Plaintiff "was not resisting," "was groaning," his "breathing was labored and there was blood on his clothing." (Id. at ¶ 451). It was at this point that Defendant Middleton "moved [Plaintiff] around roughly to facilitate the handcuff replacement, despite [his] clear inability to comply with the instruction and symptoms of medical distress." (Id. ¶ 482).

7

Plaintiff also alleges that Defendant Middleton "tried to force [Plaintiff] to stand, allowed [Plaintiff[ to collapse to the floor in the pod, dragged him out of the pod, forcibly held him up against the wall while the nurse examined him, and failed to contact emergency transport, opting instead to allow [Plaintiff] to be transported to the hospital in a police car" in direct contravention of jail policy. (Id. ¶ 474).³ Finally, Plaintiff alleges, "[u]pon information and belief" that "Defendants Fiddler, Kort, Williamson, Jones, and/or Middleton observed the Plaintiff immediately following the assault and ignored or were indifferent to the obvious signs of serious medical need, and that "[i]nstead of getting Plaintiff necessary medical assistance, they handled him roughly, [and] forcibly changed his clothes ." Id. ¶ 48.⁴

At a minimum, Defendant Middleton asserts that he is entitled to qualified immunity. He argues that his actions in "(1) rolling Plaintiff over to move Plaintiff's handcuffs from the back to the front at a nurse's direction . . . , (2) witnessing other officers allegedly holding Plaintiff up against a wall for purposes of a medical evaluation by a nurse . . . , and (3) allegedly failing to call an ambulance to transport Plaintiff to the hospital while a nurse was examining him and after the

---

³ In a footnote to his Memorandum of Law, Defendant Middleton states that he "believes" the allegations in "this paragraph to be a typographical error because it is inconsistent with the other allegations of the Second Amended Complaint," and, more specifically that "[n]one of these alleged actions, except the alleged failure to contact emergency transport, are alleged to have been taken by [him] throughout the Second Amended Complaint." (Docket No. 83 at 16 n.2). That may be so, but the Court is bound to look at all of the allegations and the inferences to be drawn therefrom. Inconsistent claims are not themselves fatal. See Fed. R. Civ. P. 8(d).

⁴ Whether Defendant Middleton is alleged to have been involved in the forced clothing change is unclear given the structure of the paragraph in the Second Amended Complaint and the fact that, elsewhere, Plaintiff alleges that Defendants Jones and Williamson forcibly changed Plaintiff's clothing (id. ¶ 44), or at least Jones did (id. ¶ 215) with Williamson's assistance (id. ¶ 372).

Further, and although Plaintiff alleges that he arrived at the Nashville General Hospital around 9:30 p.m., it is unclear how much time elapsed between his arrival there and the alleged assault by Defendant Vongsamphanh. Plaintiff does allege at least some delay resulting from Lieutenant Cole's order to take Plaintiff to male intake where his clothes were forcibly changed.

8

nurse ordered that he be transported to a hospital" do not "constitute a violation of a clearly established constitutional right of Plaintiff." (Docket No. 88 at 2-3). Moreover, Plaintiff has "fail[ed] to point to any precedent establishing Middleton's alleged actions amount to a constitutional violation of a clearly established right of which a reasonable officer in his position would have known[.]" (Id. at 1).

It is true, as Defendant Middleton argues, that "'[w]here a prisoner has received some medical attention . . . federal courts are generally reluctant to second guess medical judgments,'" and that "'[i]f a prisoner is under the care of medical experts . . ., a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.'" Smith, 505 Fed. App'x at 532 (citations omitted). It is also true that federal courts "defer when appropriate to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" Coley, 799 F.3d at 538 (citation omitted). And, it is true that "not every push or shove, even if it may later seem unnecessary" violates the Constitution. Graham v. Connor, 490 U.S. 386, 396 (1989). However, Defendant Middleton's assertion are founded on a mistaken premise, to wit, that the Second Amended Complaint merely alleges that he acted strictly in accordance with, and under the specific direction of a jail nurse or other medical personnel. Further, while the Supreme Court "has repeatedly told courts . . . not to define clearly established law at a high level of generality," a "case directly on point" is not always necessary, Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2083 (2011), "'because [s]ome violations of constitutional rights are so obvious that a 'materially similar case' is not required for the right to be clearly established," Hearring v. Sliwowski, 712 F.3d 275, 280 (6th Cir. 2013). Manhandling a compliant, paralyzed inmate would seemingly constitute such a violation.

9

None of this is to say that Defendant Middleton mistreated Plaintiff or that he did anything wrong. It is to say, however, that when all of the allegations in the Second Amended Complaint and the inferences to be drawn therefrom are construed in Plaintiff's favor, he has stated claims on which relief can be granted against Defendant Middleton. Accordingly, his Motion to Dismiss will be denied.

**III. Defendants Cole's and McCoy's Motions to Dismiss (Docket Nos. 90 & 92)**

Although separate Motions to Dismiss were filed by Defendants Cole and McCoy, their arguments are the same. They assert that all claims against them are untimely. The Court agrees.

Constitutional claims brought under Section 1983 are governed by a one-year statute of limitations in Tennessee. Johnson v. Memphis Light Gas & Water Div., 777 F.3d 838, 843 (6th Cir. 2015); Roberson v. Tennessee, 399 F.3d 792, 794 (6th Cir.2005). So, too, are claims for assault and battery, and the intentional infliction of emotional distress under Tennessee law. Tenn. Code Ann. § 28-3-104(a)(1)(A).

In this case, the original Complaint was filed on July 8, 2016, which was within a year of the incident in question. However, and even though the Complaint contained 8 placeholder Defendants identified as "John Does 1-8," neither Defendant Cole nor Defendant McCoy was named as a Defendant. Rather, it was not until the Second Amended Complaint was filed on November 23, 2016, that Defendants McCoy and Cole were identified and substituted for "John Doe 1" and "John Doe 2," respectively. Because the Second Amended Complaint was filed after the applicable statutes of limitation had run, the question becomes whether that Complaint relates back to the original filing.

The relation-back of amended pleadings is governed by Rule 15 of the Federal Rules of Civil

Procedure. So far as relevant, the rule provides:

> (1) When an Amendment Relates Back. An amendment to a pleading relates back to the date of the original pleading when:
>
> > (A) the law that provides the applicable statute of limitations allows relation back;
> >
> > (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original pleading; or
> >
> > (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
> >
> > > (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
> > >
> > > (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c).

In Cox v. Treadway, 75 F.3d 230 (6th Cir. 1996), the Sixth Circuit discussed the relation-back doctrine in the context of "John Doe" defendants. Finding that an amended complaint did not relate back to the original complaint, the court wrote:

> Sixth Circuit precedent clearly holds that new parties may not be added after the statute of limitations has run, and that such amendments do not satisfy the "mistaken identity" requirement of Rule 15(c)(3)(B). In re Kent Holland Die Casting & Plating, Inc., 928 F.2d 1448, 1449-50 (6th Cir. 1991); Marlowe v. Fisher Body, 489 F.2d 1057, 1064 (6th Cir. 1973). The amendment attempted by appellants clearly adds new parties to the complaint. The naming of 'unknown police officers' in the original complaint does not save the pleading. Substituting a named defendant for a 'John Doe' defendant is considered a change in parties, not a mere substitution of parties. Therefore, the requirements of Fed. R. Civ. P. 15(c) must be met in order for the amendment adding the named defendant to relate back to the filing of the original complaint.

Id. at 240.

Plaintiff characterizes Cox as "narrowly constru[ing] the requirements of Fed. R. Civ. P. 15(c)," contends that "there is a split in authority regarding the proper interpretation of the rule," (Docket No. 95 at 7), and asks this Court to follow the constructive notice or imputed knowledge approach recognized in Berndt v. State of Tenn., 796 F.2d 879 (6th Cir. 1986). There, the court stated that (1) "Rule 15(c) does not require that the new defendants receive actual notice;" (2) "[u]nder some circumstances, notice can also be imputed to a new defendant"; (3) "where the complaint alleges in substance that the new defendants committed the illegal acts and are officials of the original defendant, that relationship may imply receipt of sufficient notice"; and (4) "whether the new defendants knew or should have known that the suit should have been brought against them is that it is a patently factual inquiry . . . left to the district court." Id. at 884.

Plaintiff asserts that he has complied with the requirements of Rule 15(c) and, more specifically, Berndt. He argues there is no dispute that the claims against Defendants Cole and McCoy arose out of the same incident set out in the original Complaint. He also argues that those Defendants had constructive, if not actual, knowledge of the claims as of the date of the original filing, particularly since they are represented by the same attorneys that represent the majority of the other Defendants herein. At a minimum, Plaintiff argues that he is entitled to discovery on the notice issue.

Berndt dealt with mistake by a *pro se* litigant concerning the identity of the proper party and, "[u]nder Rule 15(c)(3)(B), an amended complaint that adds a new defendant relates back to the original complaint only if the newly-named defendant 'knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against

12

[him].'" Force v. City of Memphis, 1996 WL 665609, at *3 (6th Cir. Nov. 14, 1996) (citation omitted). However, "this requirement is not satisfied where the caption of an original complaint refers to 'unknown police officers' and, after the expiration of the applicable limitations period, an amended complaint specifically names those officers." Id. (citing, Cox, 75 F.3d at 240). In other words, "[t]he Rule allows relation back for the mistaken identification of defendants, not for defendants to be named later through 'John Doe,' 'unknown Defendants' or other missing appellations." Smith v. City of Akron, 476 Fed. App'x 67, 69 (6th Cir. 2012).

Here, Plaintiff "did not make a mistake about the identity of the parties he intended to sue; he did not know who they were and apparently did not find out within the [one]-year limitations period. The relation-back protections of Rule 15(c) were not designed to correct *that* kind of problem." Id. (emphasis in original). This is clear not only from the language of the original Complaint, but also from his reply memoranda in which he states that "the *extent* of [Defendants Cole's and McCoy's] involvement was not know to the Plaintiff until the Defendant's counsel made the videotape of the incident available for viewing." (Docket Nos. 95 at 10; 96 at 7, emphasis added). See, Wiggins v. Kimberly-Clark Corp., 641 Fed. App'x 545, 549 (6th Cir. 2016) (holding that "[e]ven if [plaintiff] had established that [defendants] 'knew or should have known' that he would bring the claims against them, he failed to establish that his lack of knowledge of their identities was due to a 'mistake' as the Rule requires, and observing that "plaintiff had ample means at hand to learn who the responsible individuals were and join them before the statutes ran"); Asher v. Unarco Material Handling, Inc., 596 F.3d 313, 318-19 (6th Cir. 2010) ("Although various courts have extended the relation-back provisions of Rule 15(c)(1)(C) to amendments changing identities, . . . the type of 'changes' permitted are limited to corrections of misnomers or misdescriptions.").

13

Because Defendants McCoy and Cole were not named as Defendant's until after the statute of limitation had run on each of the claims against them, they are entitled to dismissal from this action.

### IV. **Conclusion**

On the basis of the foregoing, the Court will grant the Motions to Dismiss filed by Defendants Cole and McCoy, but deny to the Motion to Dismiss by Defendant Middleton.

An appropriate Order will enter.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE